IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      )
                               )  Criminal Action
          vs.                  )  No. 04-CR-0137-3
                               )
JUDY GEMMILL,                  )
                               )
          Defendant            )

                    *    *    *

APPEARANCES:
          PAMELA FOA, ESQUIRE
            ASSISTANT UNITED STATES ATTORNEY, and
          MICHAEL S. BLUME, ESQUIRE
            ASSISTANT UNITED STATES ATTORNEY,
               On behalf of the United States of America

          ANNA M. DURBIN, ESQUIRE
               On behalf of Defendant

                    *    *    *


M E M O R A N D U M

JAMES KNOLL GARDNER
United States District Judge

          This matter is before the court on Defendant Judy

Gemmill's Motion for Judgment of Acquittal, which motion was

filed on May 24, 2005.[1]  The Government filed a response on

_____

          [1]    This Memorandum disposes of the motion defendant Judy Gemmill
filed on May 24, 2005.  Although defendant filed the motion with an
accompanying memorandum on that date, I deemed the motion to have been filed
on May 20, 2005 because defendant filed a nearly identical document, also
titled Defendant Judy Gemmill's Motion for Judgment of Acquittal, on May 20,
2005.  Therefore, for the purpose of timeliness, I related the filing date of
the May 24th motion back to filing date of the nearly identical May 20th
motion.

June 9, 2005.[2]

On February 13, 2007 I entered and filed an Order denying defendant's motion for judgment of acquittal. In footnote 2 to that Order, I stated that I intended to file a Memorandum articulating the reasoning, analysis and authority in support of that Order. Hence this Memorandum.

PROCEDURAL HISTORY

On March 11, 2004, the government filed a 33-count Indictment against 5 individuals including defendant Gemmill and her co-defendants Philip Garland, Richard Myford, David Gregory Herb and James Ballantyne. Defendant Gemmill was charged in each of the 33 counts.

Count One charges each co-defendant with conspiracy, in violation of 18 U.S.C. § 371. As alleged, the conspiracy was to make false statements to the United States Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1010, and to commit mail fraud in violation of 18 U.S.C. § 1341.

As charged in the Indictment, the objective of the conspiracy was to surreptitiously transfer funds from Garland Construction, Inc. to buyers of Garland Construction homes so that unqualified and marginally-qualified home buyers would appear to be eligible for government-insured HUD mortgages.

_____

[2]     Defendant filed a reply on September 6, 2005, and the government filed a surreply September 16, 2005.

Counts Two through Twenty-Eight and Thirty through Thirty-Three charge defendant Gemmill, as well as co-defendants Garland and Myford, with making false statements to HUD.  Count Twenty-Nine and Counts Thirty through Thirty-Three charge co-defendants Gemmill, Garland and Myford with mail fraud, in violation of 18 U.S.C. § 1341.

In Count One defendant Gemmill was also charged with aiding and abetting the conspiracy.  In Counts Two through Thirty-Three she was charged with aiding and abetting the offense charged in each of those counts.  18 U.S.C. § 2.

Defendant Gemmill's co-defendants pled guilty before trial.  Defendant Gemmill was tried by jury from April 11, 2005 to May 6, 2005.

On May 5, 2005, during the jury charge conference, the government and defendant agreed to submit a redacted version of the original Indictment to the jury.  In consecutive order, the Redacted Indictment renumbered Counts One, Fourteen through Twenty-One and Twenty-Three through Twenty-Eight as Counts One Through Fifteen.[3]

On May 6, 2005, the jury returned a verdict of guilty on each count in the Redacted Indictment.  Additionally, on May 6, 2005, defendant Gemmill moved for, and was granted, a fourteen-day period in which to file a motion for judgment of

---

[3]    For ease of discussion, unless otherwise noted, whenever I refer to counts, I refer to them as numbered in the Redacted Indictment.

acquittal.  As noted above, defendant filed her initial motion for judgment of acquittal on May 20, 2005.

<u>REDACTED INDICTMENT</u>

The fifteen-count Redacted Indictment charged defendant with conspiracy to make false statements to HUD to obtain loans in violation of 18 U.S.C. § 371 (Count One)[4], and false statements to HUD in violation of 18 U.S.C. § 1010 (Counts Two through Fifteen).  In Count One of the Redacted Indictment defendant Gemmill was also charged with aiding and abetting the conspiracy, and in Counts Two through Fifteen she was charged with aiding and abetting the making of false statements to HUD, each in violation of 18 U.S.C. § 2.

The charges involved mortgage loans for four home buyers:  Francis K. Kadish and Wendy S. Kadish[5] (Counts Two, Three and Four), Ricky Sheely and Robin Sheely[6] (Counts Five, Six, Seven and Eight), Tracy Townsend[7] (Counts Nine, Ten and Eleven) and Nathan R. Powers and Kristi L. Wolf[8] (Counts Twelve, Thirteen, Fourteen and Fifteen).

---

[4]    In the Redacted Indictment, defendant was not charged in Count One with conspiracy to commit mail fraud.

[5]    See Government Exhibit 298, a HUD-1 form.

[6]    See Government Exhibit 358, a HUD-1 form.

[7]    See Government Exhibit 410, a HUD-1 form.

[8]    See Government Exhibit 334, a HUD-1 form.

The charges alleged that falsifications were made in HUD-1 Settlement Sheets, Loan Applications, Gift Letters and HUD-1 Addenda, as follows:

<u>HUD-1</u>

| | |
|---|---|
| Count Two | (Kadish) |
| Count Five | (Sheely) |
| Count Nine | (Townsend) |
| Count Twelve | (Powers) |

<u>Loan Application</u>

| | |
|---|---|
| Count Three | (Kadish) |
| Count Seven | (Sheely) |
| Count Ten | (Townsend) |
| Count Fourteen | (Powers) |

<u>Gift Letter</u>

| | |
|---|---|
| Count Four | (Kadish) |
| Count Eight | (Sheely) |
| Count Eleven | (Townsend) |
| Count Fifteen | (Powers) |

<u>HUD-1 Addendum</u>

| | |
|---|---|
| Count Six | (Sheely) |
| Count Thirteen | (Powers) |

<u>SENTENCE</u>

Defendant was sentenced on March 6, 2007.  At that time I imposed a sentence of 30 months imprisonment,[9] to be followed

---

[9]   I imposed a sentence of 30 months imprisonment on Count One and 24 months on each of Counts Two through Fifteen, all to be served concurrently.

by three years of supervised release,[10] $74,785.00 restitution to HUD,[11] and a mandatory $1,500.00 special assessment to the United States.

## STANDARD OF REVIEW

Defendant's post-trial motion was filed pursuant to Federal Rule of Criminal Procedure 29.  In reviewing a Rule 29 motion, the court must determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based upon the available evidence presented.  In the course of reviewing the evidence, a district court must review the evidence in the light most favorable to the prosecution.  United States v. Smith, 294 F.3d 473 (3d Cir. 2002).

Further, in deciding whether a jury verdict rests on legally sufficient evidence, I am not permitted to weigh the evidence or to determine the credibility of the witnesses. Moreover, a finding of insufficient evidence to convict should be confined to cases where the prosecution's failure is clear.  Id.

---

[10]    I directed defendant to be placed on supervised release, upon release from imprisonment, for a term of three years on Count One and terms of one year each on Counts Two through Fifteen, all such terms to run concurrently.

[11]    I directed defendant Judy Gemmill to pay $74,785.00 of the $525,346.00 total restitution owed to HUD.  Previously, co-defendant Philip Garland paid $450,561.00 of the total restitution to HUD.

-6-

CONTENTIONS OF THE PARTIES

**Defense Contentions**

Defendant Gemmill contends that she is entitled to a judgment of acquittal on each count of the original Indictment. In support of her position, defendant asserts the following:

(1)   The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution requires entry of judgment of acquittal on Counts Two through Thirteen, Twenty-Two, and Twenty-Nine through Thirty-Three of the original Indictment because the government did not submit those counts to the jury.

(2)   The Paperwork Reduction Act, 44 U.S.C. §§ 3501-3521, requires entry of judgment of acquittal on Counts Three, Four, Seven, Eight, Ten, Eleven, Fourteen and Fifteen of the Redacted Indictment because the documents presented did not contain Office of Business Management numbers, as required by 44 U.S.C. § 3507 and 12 C.F.R. § 506.1(a).

(3)   There was insufficient evidence to convict defendant Gemmill on Counts One through Fifteen of the Redacted Indictment.

## Government Contentions

The government contends that the Double Jeopardy clause does not require entry of a judgment of acquittal on Counts Two through Thirteen, Twenty-Two, and Twenty-Nine through Thirty-Three of the original Indictment.  The government further contends that the Paperwork Reduction Act does not require entry of a judgment of acquittal on Counts Three, Four, Seven, Eight, Ten, Eleven, Fourteen and Fifteen of the Redacted Indictment.  Finally, the government asserts that there was more than sufficient evidence to support the jury's verdict on each count of the Redacted Indictment.

## FACTS

Based upon the evidence elicited at trial, which the jury apparently believed, the facts as viewed in the light most favorable to the government as the verdict winner, are as follows.

Between March 1999 and April 2001 defendant Judy Gemmill worked for Garland Construction Company, a home-building business owned by co-defendant Philip Garland.  Mrs. Gemmill was a licensed mortgage broker.  She worked with co-defendant Richard Myford, who served as the office manager and head of the real estate sales department for Garland Construction, and with co-defendants James Ballantyne, who was a part-time real estate

-8-

salesman with the company, and David Gregory Herb, a realtor for Century 21 who did business with Garland Construction.

Defendant Gemmill and her co-defendants intentionally lied, actively concealed facts, and got others to do the same in order to get the United States Department of Housing and Urban Development ("HUD") to insure mortgages on houses that were built and sold by Garland Construction. They made it appear to HUD that people who wanted to buy Garland homes qualified for federally insured mortgages when they did not.

The program that HUD administers through the Federal Housing Administration ("FHA") provides government assistance to people who have trouble qualifying for conventional bank loans. In order to promote home ownership, the federal government, through its FHA mortgage insurance program, guaranties that if the homeowners stop making their mortgage payments and the home goes into foreclosure, the government will pay the private mortgage company or lender the full remaining debt on the mortgage. In doing so, the federal government insures the lender against any loss, thereby eliminating all of the risk to the lender.

The government will not take an unlimited risk. HUD requires that lenders ensure that home buyers have the ability to pay the requisite mortgage and that they are reasonable credit risks. Specifically in order to qualify for an FHA-insured

-9-

mortgage, the home buyer (or a relative of the home buyer) must contribute three percent of the purchase price of the home as a down payment.

The three percent down payment cannot come from anyone who has an interest in the deal (i.e., sellers, lenders, mortgage brokers or title companies).  Although HUD permits a seller to contribute to closing costs to "sweeten the deal", HUD does not allow a seller to contribute any money towards the down payment; and HUD limits the amount that a seller can contribute to six percent of the purchase price.

Federal law requires that home buyers, sellers and their representatives fill out certain documents, including a settlement sheet ("HUD-1"), an addendum to the HUD-1 and gift letters, if applicable.  No one is permitted to lie, misrepresent or omit material facts which the parties to the transaction must sign in order to apply for, and obtain, a mortgage.  In addition no one can get others to do the lying, misrepresenting or omitting.

Garland Construction targeted its sales to first-time home buyers who did not have enough money to pay a down payment, who needed a low monthly payment and did not otherwise qualify for conventional loans.

Defendant Judy Gemmill and her co-conspirators lied and caused others to lie on HUD documents in order to get HUD to

provide FHA-insured loans.  Mrs. Gemmill knew that to get private lenders to issue mortgages insured by the federal government, she had to make it appear that the buyers had more money or less debt than they really had, or both.  To do that, she had to hide facts from HUD, and persuade others to do the same.

In order to sell more houses, builder Philip Garland was willing to contribute or loan money to home buyers to assist with closing costs.  However, Judy Gemmill had to conceal, and had to get others to conceal, the extent of Garland's parti-cipation because it exceeded what HUD allowed.

To hide how much money Garland put into the hands of home buyers, defendant Judy Gemmill and others sometimes had people pretend that Garland's money came from a family member or friend.  Mrs. Gemmill would find a relative or friend of the home buyer and have that person lie in writing by signing a "gift letter" falsely stating that he or she had unconditionally made a gift of money to the home buyers, when in fact all the relative or friend did was sign the letter.  The money did not come from the relative or friend.  It came from Philip Garland.

In some cases, the lender wanted to see that the money for the gift came from the relative's bank account.  In those cases, defendant Gemmill would have a family member or friend deposit Garland's cash in their bank account.  The family member or friend would then withdraw the amount previously given to them

by Garland Construction and obtain a certified or treasurer's check to be used at settlement.

In order to make the numbers work on the mortgage loan application, Judy Gemmill would sometimes pretend that the home buyers had done work on the house, called "sweat equity".  In several cases, the work was not performed.

Sometimes all of the money which Philip Garland secretly gave to the buyer, Garland got back by increasing the price of the house.  When more money was needed to have the sale go through, Mr. Garland and the home buyers entered into secret loan agreements that required the home buyers to repay Garland at the same time they were paying the mortgage.

In fact, Mr. Garland got the home buyers to sign promissory notes which were not disclosed to the lenders or the HUD.  Defendant Judy Gemmill notarized promissory notes on loans to pay back Garland.

Because many of Garland Construction's home buyers could not qualify for a mortgage without this deception, several of them did not have the financial wherewithal, funds or ability to make the required mortgage payments.  Several of them defaulted on their mortgages and lost their homes to foreclosure. As a result the government was obligated to pay the lenders the full remaining debt on the mortgages.

DISCUSSION

**Double Jeopardy Clause**

Defendant's first argument is that a judgment of acquittal should be entered on Counts Two through Thirteen, Twenty-Two and Twenty-Nine through Thirty-Three of the original Indictment because the government did not proceed on those counts, and, therefore, the Double Jeopardy Clause of the United States Constitution requires a judgment of acquittal.  In support of her argument, defendant cites one case from 1840 and states that "[s]ince at least 1840, if the jury is sworn, and the prosecution thereafter does not present evidence on a charge, then the result is acquittal".[12]

The government contends, without citation of authority, that its agreement with the defense to redact the original Indictment constitutes a "de facto dismissal".[13]  The government requests an Order clarifying that the redacted counts of the original Indictment were dismissed against defendant Gemmill.

In Defendant's Reply, she contends, without citation to authority, that there "is no such thing as a de facto

---

[12]     Defendant Judy Gemmill's Reply to the Government's Response to Her Motion for Judgment of Acquittal ("Defendant's Reply") at pages 1-2 (citing United States v. Shoemaker, 27 F.Cas. 1067, 2 McLean 114 (C.C.D.Ill. 1840).

[13]     Government's Response in Opposition to Defendant Judy Gemmill's Motion for Judgment of Acquittal ("Government's Response") at page 2, footnote 2.

dismissal."[14]

For the reasons discussed below, I deny defendant's motion for judgement of acquittal on the redacted counts, and clarify that on May 5, 2005 Counts Counts Two through Thirteen, Twenty-Two, and Twenty-Nine through Thirty-Three of the original Indictment were dismissed against defendant Gemmill.

<u>Judgment of Acquittal</u>

The Double Jeopardy clause is contained in the Fifth Amendment to the United States Constitution.  The text of that clause states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb".  U.S.CONST. amend. V, cl.2.

In a jury trial, jeopardy attaches when the jury is sworn.  The "protection of the Double Jeopardy Clause by its terms applies only if there has been some event...which terminates the original jeopardy." <u>Richardson v. United States</u>, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242, 251 (1984).  A defendant is able to "enjoy the full protection of the Clause" by challenging an indictment before the attachment of a subsequent jeopardy.  468 U.S. at 321, 104 S.Ct. at 3084, 82 L.Ed.2d at 248.

---

[14]     Defendant's Reply at page 1.

Here, defendant Gemmill is attempting to parlay the government's agreement (to not submit the redacted counts of the original Indictment) into a judgment of acquittal.[15]

Although defendant Gemmill may be correct that the government is now unable prosecute her for Counts Two through Thirteen, Twenty-Two and Twenty-Nine through Thirty-Three of the original Indictment, neither party has cited authority for the proposition that the Double Jeopardy principle mandates entry of judgment of acquittal upon an agreement to terminate the original jeopardy.  Additionally, I am not aware of any authority in support of that proposition.

However, because the government has not submitted the redacted counts to the jury and because a verdict in this case has been entered, the trigger for protection from double jeopardy (i.e., termination of the original jeopardy) may very well have been met.[16]

If indeed the termination requirement has been met, the protection afforded the defendant is that she may challenge a subsequent Indictment by arguing that the Double Jeopardy clause bars a second exposure to jeopardy.  This protection does not

---

[15]     See Notes of Jury Charge Conference held before me on May 5, 2005 ("Charge Conference"), at pages 6-13, 41-42.

[16]     I decline to determine whether the government may put defendant Gemmill in jeopardy again for the counts redacted from the original Indictment because the issue has neither been raised nor briefed.

necessarily mean, however, that defendant Gemmill is entitled to judgment of acquittal for the first jeopardy.

Additionally, defendant's interpretation of _Shoemaker_, _supra_, is misplaced.  Unlike this case where defendant Gemmill has been indicted once only, in _Shoemaker_, the defendant was indicted a second time after the prosecution entered a _nolle prosequi_[17] on the first indictment.[18]  It was in this procedural context that the _Shoemaker_ court held that a proceeding abandoned by the prosecution after a jury is sworn "must be considered equivalent to a verdict of acquittal" as it relates to the Double Jeopardy Clause.  27 F.Cas. at 1069-1070, 2 McLean 114.[19]

Therefore, I deny defendant's motion as it relates to a judgment of acquittal on Counts Two through Thirteen, Twenty-Two, and Twenty-Nine through Thirty-Three of the original Indictment.

---

[17]     The literal translation of _nolle prosequi_ means "not wish to prosecute".  Black's Law Dictionary 1074 (8th ed. 2004).  In the 1800's, one interpretation of nolle prosequi was as "a partial forbearance by the [prosecution] to proceed any further, as to some of the defendants, or to part of the suit, but still [it] is at liberty to go on as to the rest."  _Minor v. Mechanics Bank of Alexandria_, 26 U.S. 46, 77-78, 7 L.Ed. 47, 61 (1828).

[18]     A jury had been empaneled and sworn in connection with defendant Shoemaker's first indictment.  _Shoemaker_, _supra_.

[19]     Moreover, I am reluctant to rely on _Shoemaker_ because, as noted in the opinion, the court had "limited access to books" in rendering its decision.  _Shoemaker_, 27 F.Cas. at 1069, 2 McLean 114.

## Dismissal of Charges

As stated above, neither party has provided any authority in support of a doctrine of "de facto dismissal".  I have researched the issue and am unaware of any such doctrine in civilian law.[20]

Nevertheless, Rule 48(a) of the Federal Rules of Criminal Procedure provides that "[t]he government may, with leave of court, dismiss an indictment, information or complaint."  Additionally, Rule 48(a) provides that "[t]he government may not dismiss the prosecution during trial without the defendant's consent."[21]

On May 5, 2005 defendant Gemmill, defense counsel and government counsel each agreed to present the jury with a redacted version of the original Indictment.  I approved the agreement and permitted the government to proceed with the Redacted Indictment.[22]  Therefore, because the government and defendant agreed not to submit the redacted counts to the jury,

---

[20]     I am aware that the concept exists in the military justice system.  See United States v. Tippit, 2006 CCA LEXIS 186 (A.F.Ct.Crim.App. 2006) (unpublished).

[21]     Although Fed.R.Crim.P. 48(a) refers to Indictments, Informations and Complaints rather than specific counts in an Indictment, I believe that the rule governs this issue.  The logical corollary to the power to dismiss an Indictment in its entirety is the ability to dismiss a charge contained within it.  Courts routinely grant a prosecutor's motion to voluntarily dismiss charges within an Indictment, albeit usually in connection with a plea of guilty.  See, e.g., United States v. Hollywood Motor Car Co., Inc., 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); United States v. Hawthorne, 806 F.2d 493 (3d Cir. 1986).

[22]     Charge Conference, at page 41.

it appears that the government—with the agreement of defendant and leave of court—dismissed those charges against defendant Gemmill.

In addition, both the government and defendant appear to characterize the agreement as a dismissal of the charges. The government explicitly characterizes the agreement as a dismissal of those Counts.[23]

Defendant Gemmill implicitly characterizes the agreement as a dismissal of those charges because her Memorandum and Reply each state that the government "did not dismiss the other counts before the jury was sworn...", which implies that the government did dismiss counts after the jury was sworn.[24]

Therefore, I conclude that the government dismissed Counts Two through Thirteen, Twenty-Two, and Twenty-Nine through Thirty-Three of the original Indictment against defendant Gemmill at trial.

### Paperwork Reduction Act

Defendant's second argument is that she should be acquitted of Counts Three, Four, Seven, Eight, Ten, Eleven, Fourteen and Fifteen of the Redacted Indictment because the HUD forms do not contain Office of Business Management ("OMB")

---

[23]     Government's Response at page 2, footnote 2.

[24]     Defendant Judy Gemmill's Memorandum of Law in Support of Her Motion for Judgment of Acquittal ("Defendant's Memorandum") at page 1; Defendant's Reply at page 1.

numbers as required by the Paperwork Reduction Act ("PRA").
44 U.S.C. §§ 3501-3521; 12 C.F.R. § 506.1(a).

The government argues that the PRA does not shield
defendant Gemmill from criminal liability for the submission of
false information in violation of 18 U.S.C. §§ 2 and 1010.  The
government asserts that, although an agency's noncompliance with
44 U.S.C. § 3507 may make the submission of certain information
discretionary, if an individual chooses to submit information, he
or she may be held criminally liable for any false statements.

For the reasons expressed below, I agree with the
government and deny defendant's motion.[25]

The PRA was enacted to retard the growth of our federal
bureaucracy.  44 U.S.C. §§ 3501-3521;  Dole v. United
Steelworkers of America, 494 U.S. 26, 32, 110 S.Ct. 929, 933-934,
108 L.Ed.2d 23, 31 (1990).  Before a federal governmental agency
can collect certain types of information from the public, the
agency must request and receive approval from the OMB.  44 U.S.C.
§ 3507.  If the OMB disapproves the request and does not issue an
OMB number, the agency, seeking the information, cannot collect

---

[25]     I do not rule on whether the PRA protection from mandatory
submission of information applies because the resolution of that issue does
not affect the outcome of my analysis.  As discussed below, my analysis is
unaffected because I conclude that even if the PRA protection were to apply,
it would not bar defendant's conviction.

the information.  44 U.S.C. § 3507(a).[26]  Record keepers cannot be required to submit the information if a document does not display an OMB number.  12 C.F.R. § 506.1(a).[27]

As stated above, defendant has not provided authority for the proposition that the PRA can be used as a shield from criminal liability associated with submitting fraudulent information to the government, even if the government could not compel disclosure of the information because of the PRA. Additionally, I am not aware of any binding or persuasive authority supporting defendant's position.

On the other hand, at least three circuits have addressed this issue and rejected defendant's position.  More specifically, notwithstanding the requirements of the PRA, if an

---

[26]    The pertinent text of 44 U.S.C. § 3507(a) is as follows:

> An agency shall not conduct or sponsor the collection of information unless in advance of the adoption or revision of the collection of information–

> * * *

>> (3) the agency has obtained from the Director a control number to be displayed upon the collection of information.

[27]    The text of 12 C.F.R. § 506.1(a) is as follows:

> (a) Purpose.  This part collects and displays the control numbers assigned to information collection requirements contained in regulations of the Office of Thrift Supervision by the Office of Management and Budget (OMB) pursuant to the Paperwork Reduction Act of 1995, Pub.L. 104-13 State 163, and is adopted in compliance with the requirements of 5 C.F.R. 1320.8.  Information collection requirements that are not mandated by statute must be assigned control numbers by OMB in order to be enforceable. Respondents/recordkeepers [sic] are not required to comply with any collection of information unless it displays a currently valid OMB control number.

individual member of the public provides a governmental agency with fraudulent information—whether or not in compliance with the PRA—the PRA does not protect the individual from prosecution. United States v. Spitzauer, 1999 U.S.App. LEXIS 6535 (9th Cir. 1999)(citing United States v. Hicks, 947 F.2d 1356 (9th Cir. 1991); United States v. Sasser, 974 F.2d 1544 (10th Cir. 1992); United States v. Weiss, 914 F.2d 1514 (2d Cir. 1990).

        I find the rationale of these three circuit courts to be persuasive.  Thus, I hold that the PRA does not shield defendant from criminal liability for the voluntary submission of information in violation of 18 U.S.C. §§ 2 and 1010.

        Accordingly, I deny defendant's motion insofar as it seeks judgment of acquittal on Counts Three, Four, Seven, Eight, Ten, Eleven, Fourteen and Fifteen of the Redacted Indictment because of the PRA.[28]

### Sufficiency of Evidence

        Defendant Judy Gemmill's third argument is that all fifteen counts of the Redacted Indictment should be dismissed because there is insufficient evidence to sustain her conviction on any count.  For the following reasons, I conclude that the

---

[28]    The issue of whether defendant Gemmill is entitled to a judgment of acquittal for insufficiency of the evidence is discussed below.

evidence presented at trial is sufficient to sustain all counts
of conviction.

First, examination of the trial record as viewed in the
light most favorable to the government as the verdict winner,
reveals that sufficient evidence was elicited and introduced to
support the facts summarized above, as apparently found by the
jury.  Those facts, in turn, support the jury's verdict of guilty
on all counts.

In support of her argument that the evidence is
insufficient, defendant Gemmill makes the following arguments:
(1) she did not possess the requisite mens rea, or knowledge, as
to the falsity of the statements submitted to HUD; (2) she did
not knowingly submit, nor cause the submission of, any false
statements; (3) she did not know that payment or reimbursement of
down payments or closing costs had not been disclosed previously
in the sales contracts[29]; (4) the information on the underlying
loan applications was changed without her knowledge; (5) the
lender had knowledge of the source of the funds independent of
the HUD-1 forms; (6) she understood that the lenders, buyers,
HUD, FHA, builder and the builder's non-profit corporation knew
that the gift money was coming from the builder and that these
letters did not state anything different from gift letters that
were used by other non-profit corporations; (7) both her

---

[29]     Defendant's Memorandum at page 4.

co-defendant Richard Myford and Lou Fierro, who worked for a lender, told her that the procedure of obtaining money from Garland Construction and transferring it through individuals to the buyers was legal; (8) she did not type up the information on the documents; (9) she had no control over what was placed on the HUD-1 forms; (10) the statements in the settlement sheets were not false because the HUD-1 addenda disclose that the money came in the form of gifts and were, thus, "literally true"[30]; (11) not one of the HUD-1 forms contains an affirmative statement; (12) 18 U.S.C. § 1010 should not be read so broadly as to impose criminal liability for an omission; (13) the prosecution failed to show that any of the statements charged in the indictment were false; and (14) there was no showing that she conspired with co-defendants Ballantyne, Herb or Garland.

Defendant's arguments can be broadly characterized as follows:

    I.      She did not know what was going on.
            (arguments (1), (2), (3) and (4))

    II.     Everyone else involved (lenders, builder,
            buyers, HUD and FHA) knew what was going on.
            (arguments (5) and (6))

    III.    Others told her it was legal.
            (argument (7))

    IV.     This is the way we always did it.
            (argument (6))

---

[30]    Defendant's Reply at page 4.

V.      She did not make any false statements or
        representations.
        (arguments (2), (8) and (9))

VI.     The information in the documents was true.
        (argument (10))

VII.    The documents do not contain evidence of a
        crime.
        (arguments (11) and (12))

VIII.   The prosecution failed to prove the charges.
        (arguments (13) and (14))


<u>Elements of Conspiracy</u>

In order to convict defendant of conspiracy under
18 U.S.C. § 371,[31] the government must establish three elements.
The government must establish (1) that one or more persons
(2) conspired to commit any offense against, or to defraud, the
United States or one of its agencies, and (3) that one or more of
the conspirators committed an act in furtherance of the
conspiracy.  <u>United States v. Cross</u>, 308 F.3d 308, 310 n.1
(3d Cir. 2002).

---

[31]   The text of § 371 is as follows:

§ 371.  Conspiracy to commit offense or to defraud United
States

If two or more persons conspire either to commit any offense
against the United States, or to defraud the United States,
or any agency thereof in any manner or for any purpose, and
one or more of such persons do any act to effect the object
of the conspiracy, each shall be fined under this title or
imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the
object of the conspiracy, is a misdemeanor only, the
punishment for such conspiracy shall not exceed the maximum
punishment for such misdemeanor.

Section 371 refers to two types of conspiracies: (1) conspiracy to commit a substantive offense proscribed by another statute (the "offense clause"); and conspiracy to defraud the United States (the "defraud clause").  United States v. Alston, 77 F.3d 713, 718 (3d Cir. 1996).  Defendant Gemmill is charged with conspiracy under the offense clause for conspiring to commit the substantive offense of making false statements to HUD in order to obtain loans, in violation of 18 U.S.C. § 1010.

In order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute under the offense clause of § 371, the government must prove at least the degree of criminal intent necessary for the substantive offense itself.  United States v. Feola, 420 U.S. 671, 685-686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975).

In this case, the mens rea requirement for conspiracy to make false statements to HUD is the same as it is for the underlying offense of making false statements to HUD in violation of 18 U.S.C. § 1010, that is knowing the statement to be false. U.S. v. Alston, 77 F.3d 713, 718 (3d Cir. 1996).  However, the conspirators do not need to have knowledge of whether the object of their conspiracy violates federal law.  420 U.S. at 687, 95 S.Ct. at 1265, 43 L.Ed.2d at 554.

<u>Elements of Making False Statements to HUD</u>

In order to convict defendant of making false statements to HUD in violation of 18 U.S.C. § 1010,[32] the government must establish three elements.  The government must establish that defendant (1) made a false statement in an application; (2) knew the statement was false; and (3) made the statement for the purpose of obtaining a loan or insurance from the lending institution or HUD.  18 U.S.C. § 1010; <u>United States v. Ellis</u>, 50 F.3d 419, 426 (7th Cir. 1995).

*False Statement*

Neither party has provided the court with an applicable test to determine whether a statement submitted to HUD is false and in violation of 18 U.S.C. § 1010.  My research has revealed the following persuasive authority.

A false statement is a factual assertion.  <u>Williams v. United States</u>, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091,

---

[32]    Section 1010 provides, in pertinent part, as follows:

> § 1010.  Department of Housing and Urban Development and Federal Housing Administration transactions
>
> Whoever, for the purpose of obtaining any loan...with the intent that such loan...shall be...accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any...mortgage insured by such Department...makes, passes, utters, or publishes any statement, knowing the same to be false,...or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1010.

73 L.Ed.2d 767, 773 (1982)(superseded by statute[33] on other grounds).  Factual assertions contained in documents can be either expressed or implied.

There are two types of express factual assertions contained in documents.  The first type is an express statement appearing on the face of the document which asserts a fact.  The second type is when information expressly sought is omitted from a document combined with a signature certifying the completeness or truthfulness of the information provided in the document. United States v. Waechter, 771 F.2d 974, 978-979 (7th Cir. 1985).

Unlike express factual assertions, implied factual assertions do not appear on the face of the document.  Instead, use of a document makes a factual assertion of those propositions that are necessarily implied by the system of statutes, regu- lations, and announced policies which created the document. Waechter, supra.

Finally, neither party has cited binding authority regarding whether a statement needs to be material.  Never- theless, I conclude that a false assertion need not be material as long as the other elements are met.[34]  United States v.

---

[33]     18 U.S.C. § 1344.

[34]     Defendant Gemmill has asserted in her Memorandum and Reply that the statements must be materially false, yet she has cited no authority for that proposition.  Therefore, I believe that this issue has not been properly raised.  Nevertheless, I address the issue.

-27-

Castro, 113 F.3d 176 (11th Cir. 1997); see <u>United States v.</u>
<u>Wells</u>, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997).

I note, however, that in the dictum of a 1973 federal
trial court decision, materiality was interpreted as required to
support a conviction for violation of 18 U.S.C. § 1010.  <u>United</u>
<u>States v. Clearfield</u>, 358 F.Supp. 564 (E.D.Pa. 1973)(Becker, J.).
I decline to follow that dictum because the <u>Clearfield</u> decision
predates the United States Supreme Court decision in <u>Wells</u>,
<u>supra</u>, which held that because a similar statute (18 U.S.C.
§ 1014) did not specifically include a materiality requirement in
the text of the statute, evidence of materiality is not necessary
to support a conviction for violation of § 1014.  In § 1010, as
in § 1014, there is no specific provision requiring materiality.

*Mens Rea*

Mens rea is the mental element required to be convicted
of a crime.  <u>Staples v. United States</u>, 511 U.S. 600, 607,
114 S.Ct. 1793, 1798, 128 L.Ed.2d 608, 617 n.3 (1994).  In the
statute at issue, one of the required mental states is knowledge,
that is, "knowing the [statement] to be false".[35]  18 U.S.C.
§ 1010; <u>United States v. Ellis</u>, <u>supra</u>.  Knowledge can be inferred

---

[35]     The various mental states required in 18 U.S.C. § 1010 are "for
the purpose of obtaining any loan", "with the intent that such loan...shall
be...accepted by" HUD, "knowing the [statement] to be false", and "willfully
overvalues any...asset, or income".

from evidence.  <u>Staples</u>, 551 U.S. at 616, 114 S.Ct. at 1802, 126 L.Ed.2d at 623 n.11.

*Intent*

The third element is that the statements be made for the purpose of obtaining HUD-insured loans.  <u>United States v. Ellis</u>, <u>supra</u>.

<u>Real Estate Settlement Procedures Act</u>

Generally, the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §§ 2601-2617 applies to all federally related mortgage loans.[36]  24 C.F.R.. § 3500.5(a).  The purpose of the act was to reform the real estate settlement process.  12 U.S.C. § 2601(b).  A HUD-1 or HUD-1A, as appropriate, shall be used for every RESPA covered transaction.  24 C.F.R. § 3500.8.  Lines 204-209 of a HUD-1 form "are used for items paid by or on behalf of the Borrower."  24 C.F.R. PART 3500 Appendix A.

<u>Aiding and Abetting</u>

In addition to an actor being held criminally liable as a principal for acts that she physically committed, she may be held criminally liable as a principal for aiding and/or abetting the commission of a crime.  18 U.S.C. § 2.  In other words, 18 U.S.C. § 2 provides for criminal liability as a principal even

---

[36]   Neither party contests the applicability of RESPA to this case.

though an actor does not physically commit a criminal act herself.[37]

In contrast to 18 U.S.C. § 2(a), which logically requires that at least two individuals be principals in an offense, § 2(b) permits one person only to be criminally liable as a principal.  United States v. Grasso, 356 F.Supp. 814, 819 (E.D.Pa. 1973)(Hannum, J.).

### Defendant's Knowledge

Defendant argues that she did not know what was going on, but that everyone else (lenders, the builder, buyers, HUD and FHA) knew what was going on.  The government contends that defendant knew exactly what was happening from the beginning of the scheme and that she fully participated in it from the inception.  For the following reasons, I conclude that there is more than sufficient evidence to establish the government's contentions and to support the jury's verdict.

Defendant Gemmill argues that there was insufficient evidence to convict her because the information on the underlying

---

[37]    The text of 18 U.S.C. § 2 is as follows:

Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

loan applications was changed without her knowledge.  Defendant also argues that she had no knowledge of "payment or reimbursement...of down payment or closing costs which ha[d] not been disclosed previously in the sales contract."[38]

In response the government argues that the information in the loan applications, like the gift letters, was false because it did not accurately state the source of the funds that the buyers used.  The government further argues that defendant Gemmill, herself, testified that her role in the loan application process was to gather the information from the buyers for the initial version of the application, that she would counsel home buyers all the way through the financing process, and that she advised the home buyers to sign the applications.

Government witness Julie Shaffer, the Director of the Quality Assurance Division in the Philadelphia Home Ownership Center of Housing and Urban Development, testified that all seller financial assistance to a buyer must be revealed and disclosed on the HUD-1 settlement sheet forms.[39]  Defendant Gemmill knew from the beginning that the true source of the buyers' funds was Garland Construction, Inc., not from buyers' friends and family members, because she arranged to have money transferred from Garland Construction to the home buyers.  She

---

[38]    Defendant's Memorandum at page 4.

[39]    Notes of Testimony of the Jury Trial ("N.T."), April 21, 2005, at pages 11-12.

also knew from the beginning that the home buyers could not list the source of these funds as coming from the builder and still receive HUD-insured loans.[40]

The HUD-1 forms (that is Government Exhibits 298, 334, 360 and 410) do not list Garland Construction as the source of these so-called "gift funds", in violation of the HUD rules as testified to by Ms. Shaffer.

Additionally, defendant Gemmill herself testified that she helped gather loan transaction documents for home buyers and advised and counseled them about the papers they were to sign.[41] There was testimony that defendant Gemmill was aware of, and facilitated the preparation of, the HUD materials.[42]  Moreover, there was testimony that defendant Gemmill reviewed documents, including the settlement sheets, before settlement.[43]

A review of the record reveals that defendant Gemmill testified that she "always told [Garland customers] that [they] are not allowed to show that [the money] comes directly from the builder."[44]

---

[40]   N.T., May 2, 2005, at 80-81.

[41]   N.T., May 3, 2005, at 98-99.

[42]   N.T., May 2, 2005, at 80-81.

[43]   N.T., May 2, 2005, at 91,97.

[44]   N.T., May 3, 2005, at 31.

Defendant Gemmill also testified that she would tell the borrowers that "their family member does not have to fund [the gift to the buyer of the down payment money], that it can be funded by the builder.  You're just not allowed to show that the money is coming directly from the builder."[45]

All of the foregoing evidence elicited at trial and the reasonable inferences which can be drawn therefrom is sufficient to establish that defendant Gemmill in her role as a mortgage broker knew from the beginning of her association with the homebuilder Philip Garland and Garland Construction that HUD does not allow a seller to contribute any money towards the down payment of a home.  The evidence is sufficient to establish that she knew that if the homebuilder or seller contributed any money towards the down payment that the buyer was not entitled to receive HUD-insured loans.

The foregoing evidence is sufficient to establish that defendant Gemmill knew that Garland Construction, Inc. was providing buyers of their homes with gifts or loans to be used by the home buyers as part of their down payment, because defendant Gemmill arranged and assisted in transferring the money from Garland Construction to the home buyers.  The evidence is also sufficient to establish that defendant Gemmill knew that both federal law and the HUD forms required disclosure of the amount

---

[45]     N.T., May 2, 2005, at 81.

of money a seller provided to a buyer and the source of money used by the buyer for a down payment.

The foregoing evidence is also sufficient to establish that defendant Gemmill prepared and reviewed settlement sheets and other HUD documents which failed to disclose the required information.  The evidence is also sufficient to establish she intentionally and knowingly misled buyers into believing that it was legal and appropriate for the seller to provide the buyers with down money, so long as the settlement sheet did not reflect that the money was coming directly from the builder.

In short the evidence establishes that defendant was fully aware of what was going on from the inception, and accordingly, the evidence is more than sufficient to justify the jury's verdict.

<u>Misrepresentations</u>

Defendant argues that she did not make any false statements or representations, and that the information in the documents was true.  Therefore, she argues that the documents do not contain evidence of a crime.  The government contends that defendant Gemmill was responsible for the creation and submission of false statements in the loan applications.  For the following reasons I conclude that there is sufficient evidence to establish the government's contentions and to support the jury's verdict.

-34-

In this regard defendant Gemmill argues that not one of the HUD-1 forms contains an affirmative statement; that 18 U.S.C. § 1010 should not be read so broadly as to impose criminal liability for an omission; that the lender had knowledge of the source of the funds independent from the HUD-1 forms; and that she had no control over what was placed on the HUD-1 forms.

The government's position is that defendant Gemmill knew that the HUD-1 forms required a true and accurate picture of the real estate transaction.  In particular, a true and accurate picture requires disclosure of the amount of money a seller provides to a buyer and the source of money used by the buyer for a down payment.[46]  Thus, according to the government, the representations on the HUD-1 forms which indicate the amount of the "Seller contribution" (line 208) and the amount of cash from the borrower (line 303), respectively, are false, affirmative statements.  Therefore, the government argues that § 1010 is not being construed broadly.

Defendant Gemmill further argues that there is insufficient evidence to prove "the element of an offense under 18 U.S.C. § 1010 [which requires] that she believed these gift letters were false when made, or that [the gift letters] would

---

[46]     Government's Memorandum at page 16.

affect any decision of the direct endorsement lender to issue an FHA insured mortgage."[47]

According to defendant, her belief came from her understanding that the lender, buyer, HUD, FHA, builder, and the builder's non-profit corporation each "knew the gift money was coming from the builder" and that these gift letters did not state anything different from gift letters that were used by non-profit corporations.[48]  Although defendant Gemmill does not specify on which element of the offense of making false statements to HUD there is insufficient evidence, I conducted a complete analysis of each element as to whether there was sufficient evidence for the jury to conclude that the government met its burden on each count of the Redacted Indictment, and concluded that there was.

---

[47]    Defendant's Memorandum at page 2.

The government interprets defendant's motion as arguing that § 1010 requires HUD to have relied on the false statements.  The government calls this "reliance" and cites authority for the proposition that HUD does not need to rely on the statements.  Henninger v. United States, 350 F.2d 849 (10th Cir 1965).

Even if defendant Gemmill has sufficiently raised this issue, she has not cited any authority for the proposition that HUD must have actually relied on the statements.

Therefore, because defendant has not cited any authority to support this contention, we consider it waived.  Moreover, to the extent that the issue is not waived, the authority supports the government's position that the government does not need to prove actual reliance.  United States v. Goberman, 458 F.2d 226, 229 (3d Cir. 1972).

[48]    Defendant's Memorandum at page 2.

The government asserts that there is ample evidence to support the jury finding that defendant Gemmill intended to keep the true source of the funds from HUD even though some of the individuals at the lenders and HUD knew the source of the funds.

Additionally, defendant argues that the statements were not false because the HUD addenda disclose that the money came in the form of gifts and were, thus, "literally true".[49]

Defendant argues that she did not knowingly submit, nor cause the submission of, a false statement.  The government argues that the HUD-1 addenda require that the participants in a real estate transaction disclose the source of funds used in that transaction.  Further, the government argues that because the filled-out addenda do not disclose the original source of the funds, that is, Garland Construction, Inc., the addenda are false.

Defendant Gemmill's motion for judgment of acquittal raises two issues:  (1) whether there was sufficient evidence for the jury to find that defendant had the requisite mens rea to be convicted of any offense charged in the Redacted Indictment[50] and (2) whether there was sufficient evidence for the jury to conclude that there was a submission of false statements in

---

[49]    Defendant's Reply at page 4.

[50]    This is the second of the three elements of the crime of making false statements to HUD, discussed above.

violation of 18 U.S.C. § 1010.[51]  The first issue has been discussed in the subsections on *Mens Rea* and <u>Defendant's Knowledge</u>, above.

Regarding the second issue, defendant Gemmill argues that because the homebuilder Philip Garland transferred money to a third party (for example, a relative of the buyer) with the expectation that the funds would ultimately be transferred to the home buyer, then the transfer of the money from the relative to the buyer was a "gift" from the relative.  Defendant contends that when the buyer uses this money to pay part or all of the down payment, and the HUD-1 settlement sheet reflects that the down payment is a "gift" from the buyer's relative, then the settlement sheet is "literally true".

On the other hand, the government's position is that the builder is laundering the funds through other individuals to impermissibly fund the buyer's purchase of the home.  Therefore the government contends that the down payment was a gift from Philip Garland, and not gift from the buyers' relative.

A representative example of this dispute between the parties is the Sheely purchase and mortgage loan.  The testimony established that Garland Construction gave $3,500.00 to Ricky and Robin Sheely for their down payment, by transferring the money to

---

[51]     This is the first of the three elements of the crime of making false statements to HUD, discussed above.

Ricky's mother, Nancy Sheely, and Nancy's husband, Robert Sheely, who in turn gave the money to the Sheelys.[52]   The Redacted Indictment alleges that in order to hide the true source of the funds (Garland Construction) from HUD and the FHA, falsifications were made in the HUD-1 settlement sheet (Count Five), the HUD-1 addendum (Count Six), the loan application (Count Seven) and the gift letter (Count Eight).

A review of the HUD-1 addendum in Count Six[53] indicates that there is a certification by the buyers, Ricky and Robin Sheely, that they have not been reimbursed or paid for any of their closing costs.  There are two additional certifications, which include a certification by the seller that no additional loans exist and that the seller will not reimburse the buyer for other costs.  There is also a signature certifying the truthfulness and accuracy of the statements made by the settlement agent in connection with the HUD-1 form.

This dispute over the truth or falsity of the transaction documents was a question of fact for the jury.  The jury's verdict reflects that the jurors resolved this factual dispute in favor of the government and against the defendant.

I find that a rational trier of fact could have found beyond a reasonable doubt that the money from the homebuilder was

---

[52]     N.T., April 19, 2005, at 27-28.

[53]     Government Exhibit 357.

not gratuitously given to third parties who then happened to gift the money to the buyers.  Instead, a rational trier of fact could have found beyond a reasonable doubt that the money transferred to the third parties was done in contemplation of the third parties transferring the money to the home buyers.  Thus, a rational trier of fact could have found that the homebuilder's transfer of funds to the third party and then to the buyer was in reality a form of reimbursement or payment from the builder to the home buyers.

In other words, a rational trier of fact could have found that false factual assertions (or false misrepresentations) were made in the HUD-1 addenda, as well as in the other documents.  To phrase this another way, given the evidence, a rational trier of fact could have concluded that the statements in the HUD-1 addenda and gift letters that the down payment money was a gift from persons other than the builder were misrepresentations and were not "literally true".

Therefore the evidence was sufficient to support the verdict of guilty on Counts Two through Fifteen.[54]

---

[54]   Defendant appears to contend that the evidence is insufficient to establish the third of the three elements of the crime of making false statements to HUD, discussed above; that is, that the false statements were made for the purpose of obtaining a loan or insurance from the lending institution or HUD.  See Defendant's Memorandum at page 2.

However, the evidence is more than sufficient to establish that defendant's falsification of documents and misrepresentations to the buyers and to HUD were made with the intent to get the buyers to sign the false

(continuation of footnote 54):

<u>Liability as Aider and Abettor</u>

Additionally, at the very least, there was sufficient evidence for the jury to find that defendant is criminally liable as an aider and abettor for the offenses charged in Counts Two through Fifteen of the Redacted Indictment, pursuant to 18 U.S.C. § 2.  In other words, a rational trier of fact could have found beyond a reasonable doubt that defendant Gemmill aided, abetted, counseled, or procured the making of statements that were false in either the express or implied sense; that she knew that the statements were false; and that the purpose of the false statements was to obtain a HUD-insured loan on each count.

Specifically the testimony established that defendant Gemmill reviewed the HUD-1s before closing and counseled her customers during closing about the documents they were to sign, and that she made sure that the false HUD-1s and other documents were signed.  In this regard, defendant's argument that she did not type up the information in the documents is unconvincing. Pursuant to § 2, she does not need to physically prepare the document.

---

(<u>Continuation of footnote 54</u>):

documents necessary to obtain HUD approval for FHA-insured mortgage loans to enable her employer Philip Garland to sell his homes to people who could not afford them with the proceeds of government-backed loans for which the buyers did not qualify.

<u>Conspiracy</u>

Finally, defendant argues that there is insufficient evidence to support her conviction of conspiracy in violation of 18 U.S.C. § 371.[55]  In support of this argument, defendant Gemmill asserts that the prosecution failed to show that any of the statements charged in the Redacted Indictment were either false or enforceable and that there was no showing that she conspired with co-defendants Ballantyne, Herb or Garland.

Moreover, defendant Gemmill argues that the evidence shows that co-defendant Richard Myford and Lou Fierro, who worked for a lender, told her that the procedure for obtaining money from Garland Construction and transferring it through individuals to the buyers was legal.  Defendant also argued that she lacked the mens rea required to be convicted of conspiracy.

The government asserts that there was ample evidence for a rational trier of fact to find beyond a reasonable doubt

---

[55]    The text of § 371 is as follows:

§ 371.  Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment for such misdemeanor.

-42-

that defendant Gemmill is guilty of Count One, Conspiracy.  For
the following reasons, I agree.

       At the trial, co-defendant Richard Myford testified
that he had weekly meetings with Philip Garland, the owner of
Garland Construction.  At these meetings they discussed
everything about the Garland Construction business, including
loans, moneys, and business practices.[56]  Judy Gemmill attended
two or three of these meetings but it was unclear whether
anything improper was discussed when she was present.[57]

       Mr. Myford testified that it was part of Garland
Construction's practice to use gift letters as part of the
financing in 85 percent of the cases where the home buyers
obtained loans from lenders.[58]  In these cases money was given to
parents of the buyers or other relatives by Garland Construction,
but the true source of the money was not disclosed in the loans,
and gift letters were prepared that were untrue.[59]

       Richard Myford specifically talked with Philip Garland
about the risks associated with funneling money through buyer's
relatives.  They understood that this violated HUD policies, but
Mr. Garland made it very clear that the corporation would not

---

[56]    N.T., April 25, 2005, at 164-166.

[57]    N.T., April 25, 2005, at 165.

[58]    N.T., April 25, 2005, at 167-172.

[59]    N.T., April 25, 2005, at 168, 172.

-43-

mind the monetary risks involved, including that the FHA might
consider some of the loans an illegal inducement, that Garland
Construction might lose the right to sell FHA loans, and might
even be fined for the ways the FHA loans were done.[60]

Judy Gemmill also understood that they were violating
HUD policies.  Richard Myford and she talked about it many
times.[61]  To justify the fraudulent gift letters, Judy Gemmill
and Richard Myford reasoned that it was the donors (the buyers'
relatives who received the money from Garland and passed it on
to the buyers) who were lying, not themselves.[62]

At the trial, Judy Gemmill testified that she knew
about the gift letters.  She knew that it was an ongoing existing
practice.[63]  She knew from "Day one" that the gifts were being
funded by Garland Construction.[64]

When Judy Gemmill first began working at Garland
Construction, Richard Myford told her that Garland was going to
be funding the gift letters.[65]  Mr. Myford told Judy Gemmill that
when a check was requested for settlement on a house purchase,

---

[60]    N.T., April 25, 2005, at 172-174.

[61]    N.T., April 25, 2005, at 174.

[62]    N.T., April 25, 2005, at 175.

[63]    N.T., May 2, 2005, at 78-79.

[64]    N.T., May 2, 2005, at 80.

[65]    N.T., May 2, 2005, at 83.

she should send a request over to Garland's Lancaster office, and that all funds for everything came from Lancaster.[66]

During defendant Gemmill's employment at Garland Construction, Mr. Myford and defendant Gemmill discussed many times the fraud and risks they faced should HUD find out about the transfers.[67]  Many of the home buyers, their relatives and friends testified that defendant Gemmill directed them to fill out false documents.[68]

After defendant Gemmill found out that the government was investigating her role at Garland Construction, she, her husband and Myford destroyed documents that were evidence of their criminal activity.[69]

Defendant Gemmill argued that the government presented no evidence that any of the allegedly false statements charged in the Redacted Indictment were false.  Such an argument has no bearing on her conviction.  This is because success in attaining the object of the conspiracy is not an element of the crime of conspiracy.  18 U.S.C. § 371.  Moreover, even if evidence sufficient to support a conviction of the object of the conspiracy were necessary, the government has met this burden.

---

[66]    Id.

[67]    N.T., April 25, 2005, at 174, and N.T., April 26, 2005, at 39.

[68]    N.T., April 18, 2005, at 114-116, 129-133, and N.T., April 19, 2005, at 27-28.

[69]    N.T., April 26, 2005, at 103-109.

In the previous sections, I have discussed the sufficiency of the evidence, and found the evidence sufficient to support defendant's convictions in relation to 18 U.S.C. §§ 2 and 1010.  I incorporate those sections here.  Therefore, I reject defendant's argument on this point.

Defendant Gemmill argues that there was no evidence that she conspired with co-defendants Ballantyne, Herb or Garland and that she is, therefore, not guilty of conspiracy.[70]  I disagree.  Even if the government did not meet its burden of establishing that defendant Gemmill conspired with Ballantyne, Herb or Garland, the government met its burden of establishing that defendant Gemmill conspired with Richard Myford.

In particular, there was testimony by defendant Gemmill herself that she worked with Richard Myford to obtain certified checks to transfer money from Garland Construction to be transferred ultimately to the purchasers.[71]  Additionally, Richard Myford testified that he, defendant Gemmill and another person destroyed documents regarding these transactions after receiving a Grand Jury Subpoena in connection with these matters.[72]

---

[70]    The government did not address this argument in its response to defendant's motion.

[71]    N.T., May 2, 2005, at 79.

[72]    N.T., April 26, 2005, at 104-109.

-46-

Under the applicable standard, I find that a rational trier of fact could have found beyond a reasonable doubt that defendant Gemmill is guilty of conspiracy.  The record indicates that she conspired with Richard Myford and others to violate 18 U.S.C. § 1010 and that documents containing false statements were submitted to HUD in furtherance of the conspiracy.

Moreover, because there was sufficient evidence for the jury to find that defendant Gemmill is guilty of entering into a conspiracy with Mr. Myford, it is immaterial whether the government submitted any evidence that defendant Gemmill conspired with co-defendants Ballantyne, Herb or Garland.

Additionally, as stated above, defendant's knowledge as to the legality of her actions is immaterial.  Defendant Gemmill need only to have intended to enter into the conspiracy and to submit false statements to HUD.  As additional evidence that defendant knew that the statements submitted to HUD were false, co-defendant Richard Myford testified that he had at least one conversation with defendant Gemmill in which he told her that he did not want any part of orchestrating the delivery of money to buyers because it "felt like a fraud."[73]

Finally, I concluded in the previous sections that there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant Gemmill had the requisite mens

---

[73]     N.T., April 26, 2005, at 39.

rea to be convicted of the underlying 18 U.S.C. §§ 2 and 1010 charges.  I incorporate those sections here.

<u>CONCLUSION</u>

For all the foregoing reasons, I deny defendant Gemmill's motion for judgment of acquittal.


                              BY THE COURT:


                              ___/s/James Knoll Gardner___
_____          James Knoll Gardner
                              United States District Judge

Date:  July 11, 2007

-48-